No. 2--06--0353          Filed:  7-26-07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Ogle County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Nos.  04--DT--1 |
| | ) | 04--TR--15 |
| | ) | 04--TR--16 |
| | ) | 04--TR--17 |
| | ) | |
| JOHN LONGORIA, | ) | Honorable |
| | ) | Kathleen O. Kauffmann, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

The State appeals the trial court's order dismissing with prejudice charges against defendant, John Longoria, after the trial court declared a mistrial and found that the State was responsible for it.  The State contends that there is no indication that the prosecutor intended to provoke defendant into moving for a mistrial and, accordingly, it may retry defendant.  We reverse and remand.

Defendant was charged by complaint with leaving the scene of an accident (625 ILCS 5/11--401(a) (West 2004)), driving with a revoked license (625 ILCS 5/6--303 (West 2004)), operating an uninsured motor vehicle (625 ILCS 5/3--707 (West 2004)), and driving under the influence of alcohol (625 ILCS 5/11--501(a)(2) (West 2004)), following an accident on January 4, 2004.  Defendant's jury trial did not begin until March 6, 2006.  On the day of trial, defendant moved in limine to bar, inter

alia, evidence of other crimes that defendant committed. The trial court denied the prosecutor's request for a short continuance to review the motion, which had not previously been served on him. The court granted the motion as it related to evidence of defendant's other crimes.

At trial, Christopher Fant testified that on January 4, 2004, he was following a minivan south on Route 251. It had been snowing, and the road was slippery. Fant saw a northbound red car, later identified as a Mercedes, cross the centerline and strike the minivan head on. The red car "bounced back into the ditch," backed out of it, and took off. Fant pulled up alongside the minivan to see if its occupants were alright. The driver said that everyone was alright, but asked Fant to follow the red car.

Fant followed the red car for about 12 miles until it stopped at the Rolling Meadows Trailer Park in Davis Junction. Fant pulled up beside the red car. A man, whom Fant identified as defendant, "poured" himself out of the driver's side door of the red car. No one else was in the car. Fant asked defendant why he "took off after he just hit a van full of people." Defendant denied having done so. However, Fant disputed this based on the damage to the red car. Defendant refused to give his name.

Fant testified that defendant's speech was slurred, he smelled of alcohol, and he kept stumbling. Defendant had to hold onto the car to support himself. When Fant told defendant that he had the police on the phone, defendant tried to move toward a trailer. Fant and his stepson stepped in front of defendant to prevent him from entering the trailer.

When the police arrived, Fant and his stepson were still standing between defendant and the steps to the trailer. Fant and his stepson then backed away to "let the police handle things." After the police arrived, defendant claimed for the first time that he was sick and needed to see a doctor.

Fant testified that the collision occurred one mile from Rochelle, which has a hospital. However, Davis Junction, 12 miles from the scene, has no hospital.

Defendant called, out of order, Dr. Anthony Niezyniecki, an emergency room physician at SwedishAmerican Hospital who treated defendant on January 4, 2004. Niezyniecki testified that his notes made no reference to defendant having consumed alcohol that day. He stated that he treated defendant for peripheral neuropathy. The recommended treatment is a morphine injection. While the use of morphine for a person with alcohol in his system is not contraindicated, it would have to be monitored carefully because alcohol tends to enhance the effects of the morphine.

Niezyniecki testified that defendant initially gave his brother's name when he arrived at the emergency room. The prosecutor asked Niezyniecki if defendant told him why he gave his brother's name rather than his own. Defense counsel objected and the trial court sustained the objection. Outside the jury's presence, defense counsel argued that the question violated the court's in limine order, and he moved for a mistrial. The court denied the motion, ruling that the evidence sought was transactional and, accordingly, did not violate the in limine order.

The prosecution then resumed its case. After calling several witnesses whose testimony is not relevant here, the State called defendant's brother, Richard Longoria. He testified that, shortly before January 4, 2004, he acquired the red Mercedes that defendant was driving. Richard Longoria left the car at his brother's house while he was waiting for insurance and license plates for it.

Richard Longoria testified that his brother--defendant--did not have permission to borrow the Mercedes. Moreover, he had never given defendant permission to borrow that car. At that point, defense counsel objected to that series of questions. The trial court sustained the objection and instructed the jury to disregard those questions and answers.

Outside the jury's presence, defense counsel again moved for a mistrial, arguing that the questions violated the court's in limine order barring reference to other crimes. The trial court granted the motion, finding that the questions were "extremely prejudicial" to defendant as they raised "the specter, at least" of defendant having committed another crime. The court told the prosecutor that it "hate[d] to attribute your questions to bad faith," but in light of the "previous discussion" (presumably regarding Niezyniecki's testimony), it could not understand why he had asked those questions. In a written order issued the following day, the court wrote that, because the mistrial was "occasioned by actions of the State," it was dismissing the charges with prejudice. The State timely appeals.

The State primarily contends that the trial court erred by dismissing the charges with prejudice. The State argues that, because defendant requested the mistrial, double jeopardy principles do not bar a retrial unless the prosecutor's conduct was intended to goad defendant into moving for a mistrial. The State maintains that the record shows that the prosecution's case was going well and there is no reason the prosecutor would have wanted a mistrial. The State also appears to contend that the trial court erred by declaring a mistrial at all and by denying the prosecutor's motion for a continuance to respond to defendant's motion in limine. We agree with the State's principal contention. Our resolution of that issue renders the State's remaining contentions moot.

The double jeopardy clauses of the United States and Illinois Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10) protect a criminal defendant from repeated prosecutions for the same offense. Where a court acting without the defendant's consent declares a mistrial, the court deprives the defendant of his valued right to have a particular jury decide his fate. People v. Street, 316 Ill. App. 3d 205, 211 (2000). When this happens, the State should be allowed to retry the

defendant only if there was a manifest necessity for declaring the mistrial. Street, 316 Ill. App. 3d at 211; People v. Roche, 258 Ill. App. 3d 194, 198-99 (1994). However, when the defendant, rather than the State, moves for a mistrial, the defendant is deemed to have deliberately chosen to forgo his valued right to have his guilt or innocence determined before the first trier of fact. People v. Nelson, 193 Ill. 2d 216, 220-21 (2000); People v. Campos, 349 Ill. App. 3d 172, 176 (2004). In such a case, double jeopardy principles do not bar a retrial unless the governmental conduct in question amounts to overreaching, which is defined as conduct intended to goad the defendant into moving for a mistrial. Oregon v. Kennedy, 456 U.S. 667, 676, 72 L. Ed. 2d 416, 425, 102 S. Ct. 2083, 2089 (1982). "This is a 'narrow exception' that the Supreme Court adopted after rejecting a more general standard based on a prosecutor's bad-faith conduct or harassment of the defendant." Campos, 349 Ill. App. 3d at 176, quoting Kennedy, 456 U.S. at 673-75, 72 L. Ed. 2d at 423-24, 102 S. Ct. at 2088-89.

Generally, we review the trial court's ultimate ruling on whether the prosecution was guilty of overreaching under an abuse of discretion standard. Campos, 349 Ill. App. 3d at 175-76. However, whether the trial court applied the proper legal standard is an issue of law that we review de novo. Campos, 349 Ill. App. 3d at 176. Here, resolution of the issues turns on whether the trial court applied the correct legal standard. Therefore, our review is de novo.

Here, the trial court did not find, at least expressly, that the prosecutor intended to goad defendant into moving for a mistrial. The court's order states only that the mistrial was "occasioned by actions of the State." However, this is not the test. Where the defendant successfully moves for a mistrial, double jeopardy does not bar a retrial even if the basis for the mistrial can be attributed to the State. People ex rel. Roberts v. Orenic, 88 Ill. 2d 502, 507-08 (1981); People v. Wilson, 309 Ill.

App. 3d 235, 243-44 (1999). This is so because a defendant's right to have the trial completed by a particular tribunal must be balanced against the public's interest in fair trials designed to end in just judgments. People v. Bagley, 338 Ill. App. 3d 978, 983 (2003). As one court has stated:

"Because of the complexities of the trial itself, some prosecutorial or judicial error may inevitably occur in a significant number of cases. To preclude reprosecution whenever such error results in a mistrial would exact too high a price for the defendant's interest in finality and accord too little weight to society's final interest in the enforcement of criminal laws." People v. Palmisano, 124 Ill. App. 3d 770, 773 (1984).

In Campos, this court affirmed the trial court's refusal to dismiss charges on double jeopardy grounds, finding that a mistrial resulted from the prosecutor's " 'dumb mistakes,' " rather than deliberate overreaching. Campos, 349 Ill. App. 3d at 177. Here, the prosecutor's questions appear to have been, at worst, mere mistakes. Although the State disputes whether the questions violated the in limine order at all, we will assume for purposes of this appeal that they did. The order barred evidence of other crimes that defendant committed, and the questions and answers clearly implied that defendant had driven his brother's car without permission. However, the fact that the prosecutor violated the court's order does not prevent a retrial absent evidence of overreaching. Moreover, we find nothing in the record to demonstrate that the prosecutor's questions were intended to provoke defendant into moving for a mistrial. The prosecution's case appeared to be going well; the evidence against defendant was strong. There is no reason to think the prosecutor would have wanted to start over with a different jury.

In response to the State's argument that the prosecution's case appeared to be going well, defendant offers only speculation. He contends that "the cold transcript can reveal only so much on

appeal. The trial judge, and the prosecutor, were both able to observe the jurors' facial expressions and their reactions to the evidence, as this court cannot." However, defendant points to nothing concrete that shows the jury was reacting badly to the State's case. We will not affirm the trial court on the basis of speculation that the court must have observed something in the jurors' faces that is not apparent in the record.

We note that, when a trial court uses the wrong standard in exercising its discretion, the case will be remanded to allow the trial court to apply the proper standard. See People v. McDermott, 141 Ill. App. 3d 996, 1009-10 (1986) (where record is unclear as to the factors on which the trial court relied in sentencing the defendant, but the trial court may have relied upon an improper factor, the trial court will be directed on remand to avoid consideration of the improper factor). Here, the trial court considered only that the mistrial was occasioned by actions of the State, which is the wrong standard. On remand, we direct the trial court to consider whether the State's violation of the order in limine was the product of deliberate overreaching designed to goad defendant into requesting a mistrial, rather than the product of prosecutorial mistakes.

As noted, the State also argues that the trial court should not have declared a mistrial in the first place and should have granted the prosecutor's request for a short continuance to review defendant's motion in limine. The trial court's failure to grant a continuance is not the type of issue the State may appeal (see 210 Ill. 2d R. 604(a)(1)) and, perhaps for this reason, the State does not designate this argument as a separate issue. In any event, our resolution of the State's primary issue renders these issues moot.

The judgment of the circuit court of Ogle County is reversed, and the cause is remanded. On remand, the trial court is to apply the correct standard of deliberate prosecutorial overreaching in determining whether to dismiss the charges with or without prejudice.

Reversed and remanded with directions.

McLAREN and BYRNE, JJ., concur.